ZILKY ET AL. *v.* CARTER

[No. 17,471.   Filed May 1, 1946.]

596

*Gerald W. Rybolt,* and *George C. Uhler,* both of Kokomo, and *Arnold, Degnan, Goheen & Zimmerman,* and *Robert K. Rodibaugh,* all of South Bend, for appellants.

*Kenneth E. Shockley,* of Kokomo, for appellees.

DRAPER, J.—The appellees, plaintiffs below, brought this action to quiet the title to Lot 8, in the J. C. Jackson Addition to the City of Kokomo, in Howard County, Indiana. They claim title by virtue of a conveyance from the Auditor of Howard County, as property of Howard County, acquired through the bidding in thereof by the Auditor, for said County, for delinquent taxes, pursuant to § 2 of Ch. 224 of the Acts of 1941.

The appellants Zilky and Zilky denied the title of appellees, and asserted an adverse interest by reason of a judgment rendered in their favor on November 3, 1943, which judgment was based upon their ownership of certain bonds issued in connection with Barrett Law assessments against said property.

The appellants O'Blenis and O'Blenis denied the title of appellees, and filed a cross-complaint by which they sought to quiet the title in themselves, alleging themselves to be in possession of said real estate, and to be the owners thereof in fee simple, by reason of a warranty deed dated September 11, 1943, from Boone and Boone, the then record owners thereof.

The facts were stipulated. The trial court found for the appellees and against the appellants, that the appellees were the owners in fee simple, and entered a decree quieting the title of appellees in and to said real estate.

The appellants' motion for new trial, the overruling of which is assigned as error here, asserts the insufficiency of the evidence and the illegality of the decision.

The property in question was advertised for sale in 1938 and 1939. It was not advertised in 1940 but in 1941 it was again advertised. In each advertisement it was stated that the sale was being advertised both for general taxes and Barrett Law improvements, and that the "amount set opposite to each parcel of land includes all taxes . . . plus penalty and costs, all Barrett Law

improvement assessments and costs," and the "total tax due" as stated in the notice was inclusive of all of those items and amounted to more than $1200.

At no time was the real estate advertised for sale for taxes alone, either in 1938, 1939, 1940 or 1941. No bid was received during 1938, 1939, 1940 or 1941 for the amount for which the Auditor published notice of sale for said land, equivalent to the amount of the taxes, interest, penalties, costs and special assessments, and on the first Monday in December, 1941, the Auditor, on behalf of the county, noted in the record that he had, pursuant to Ch. 224 of the Acts of 1941, bid in said property on behalf of the county and the sub-units of government.

On February 1, 1943, no person having offered to redeem, the Auditor executed a tax deed conveying said real estate to Howard County, Indiana, and the same was duly recorded in the office of the Recorder of that county. On May 15, 1944, the appellee Carter bought said property from the county for the sum of $485.00, and on May 16, 1944, he received a deed executed by the Board of Commissioners of said county conveying said property to him. On June 6, 1944, the appellee Carter conveyed an undivided one-half interest in the real estate to the appellee Bousum. The proceedings following the Auditor's bid on behalf of Howard County, on the first Monday in December, 1941, are not in question and are, therefore, not set out in complete detail.

The appellants contend that certain of the proceedings preceding the Auditor's bid were fatally defective; that the county, therefore, acquired no title and the appellees could acquire no title from the county.

In the view we take of the case, it will be necessary to consider but one of appellants' contentions. In so doing we may not overlook the admonition found in

§ 5 of the Act (§ 64-2213, Burns' 1943 Replacement), nor the fact that the attitude of courts and legislatures toward tax sales, and the necessity of strict compliance with statutory provisions governing such sales has changed considerably in recent years. 51 Am. Jur., p. 912, § 1045. It must nevertheless be true that statutes governing such sales, and the steps leading up to them, must be at least substantially complied with before an owner may be deprived of his property in that fashion.

The appellants contend that to be sufficient under § 2 of the Act, the advertisements pursuant to which the sale is made must have been for delinquent taxes only, exclusive of special assessments, and that any advertisement which offered the property for sale at a price inclusive of special assessments could not be considered a sufficient advertisement under the statute. In other words, the appellants contend that before the Auditor could lawfully bid the property in, it must have first been unsuccessfully offered for sale twice, in two separate years, to bidders for *general taxes only*. With this contention we must agree.

It seems that, prior to the statute of 1941, there was no way in which the state and local governmental units could enforce their liens for taxes by sale of the property, unless a bid was received sufficient in amount to pay all taxes and Barrett Law assessments. See § 48-4406, Burns' 1933, and *First Bank & Trust Co. of South Bend* v. *Ralston* (1944), 222 Ind. 584, 55 N. E. (2d) 115.

It is common knowledge that delinquent special assessments for local improvements often amounted to several times the delinquent general taxes against many properties in this state, and the fact that such properties could be sold at tax sale only to satisfy both taxes and assessments resulted in the failure of

such properties to sell, with consequent inability to collect by sale the revenues justly due the various governmental units.

Section 2 of ch. 224, Acts 1941, reads in part as follows:

"No real estate shall be sold for the purpose of collecting any delinquent installment or installments of tax until fifteen months shall have elapsed after any such installment shall have become delinquent, *and such real estate shall be sold for the purpose of collecting all taxes then a lien against such real estate. . . . Whenever any real estate has been or shall hereafter be advertised and offered for sale for delinquent taxes, by the county treasurer, for any two years or more, and no person shall have bid therefor a sum equal to the delinquent taxes thereon,* then all of such real estate as remains unsold on the first Monday of December of any year during which such real estate shall have been so offered for sale, shall, by the auditor of such county, on said Monday be bid in for such county for a sum equal to the amount of delinquent taxes, and costs thereon, such sum to include any subsequently accrued delinquent taxes and penalties but not to include liens for any improvement assessment against such real estate, and thereupon said county shall be entitled to and shall receive tax sale certificates and/or tax deeds in the same manner and with the same rights as any other purchaser at such sale except as herein otherwise provided." (Our italics.)

It is apparent, particularly when Section 6 (the repealing clause) is kept in mind, that the language of this section was intended to remedy the situation above mentioned by making possible the collection of unpaid taxes by sale of the property, irrespective of unpaid installments of special assessments. The legislature realized, however, that some properties would not sell at tax sale though offered for

taxes only. The section, therefore, provides that whenever real estate "has been or shall hereafter be advertised and offered for sale for delinquent taxes, . . . for any two years or more, and no person shall have bid therefor a sum equal to the delinquent taxes thereon," such property shall be bid in by the Auditor on behalf of the county.

The collection of the taxes was the important consideration. If, after offering the property for sale for delinquent taxes alone for two years or more the property would not sell, it would be amply demonstrated that the likelihood of ever being able to so dispose of said property was remote, and by this legislation such property could then be removed from the tax duplicates and find its way into useful taxpaying ownership. It was not desirable, nor was it intended, that the county should take over any property which could be sold at tax sale for delinquent taxes exclusive of assessments. Naturally, until the property had been offered for sale for taxes only, and until it was lawful for bidders to purchase property for taxes only exclusive of special assessments, it could not be determined whether or not such property could be sold and the revenue thus collected.

It is noteworthy that the legislature did not provide that such properties could be bid in by the Auditor whenever they had been unsuccessfully advertised for sale for two years or more and *had not been sold*. Instead the legislature provided that such properties could be bid in by the Auditor whenever they had been unsuccessfully advertised for sale for two years and no person *had bid a sum equal to the delinquent taxes thereon*. Obviously, the legislative purpose could not be accomplished unless the property was advertised and offered for sale for delinquent taxes only, and until

the legal opportunity had been afforded buyers to bid a sum equal to the delinquent taxes alone.

But under the statute no person could lawfully have bought the property at the 1941 tax sale for taxes only. Sec. 6 of ch. 224 of the Acts of 1941, (§ 64-2214, Burns' 1943 Replacement), repeals §§ 222 and 261 of the Acts of 1919. It also repeals § 2, ch. 65 of the Acts of 1932 and so much of § 2 of ch. 317 of the Acts of 1935 (§ 48-4406, Burns' 1933) as requires a tax sale to be not only for the delinquent taxes, but also for delinquent special assessments. Because of the emergency clause (§ 8 of the Act), the repealer took effect on March 12, 1941, as to §§ 222 and 261 of the Acts of 1919, but no part of § 2 of ch. 317 of the Acts of 1935 (§ 48-4406, Burns' 1933) was repealed effective immediately. Therefore, the repeal of so much of § 2 of ch. 317 of the Acts of 1935 as required a tax sale to be not only for the delinquent taxes, but also for delinquent special assessments did not become effective until July 8, 1941. It is therefore apparent that no person could have bid the property at the 1941 tax sale for taxes only, even though the property had been so advertised for sale.

Since the property had not been advertised for delinquent taxes only, as required by § 2 of the Act, and since no person could have legally bid a sum equal to the delinquent taxes thereon, both of which were conditions precedent to the Auditor's right to bid, we hold that the Auditor had no right to bid under the statute. The county, therefore, acquired no title to the real estate and of course could convey none.

Obviously, what we have said concerning the advertisement of lands for sale at tax sale would have no application to lands (such as those not encumbered with

delinquent special assessments) which were advertised for sale for taxes only.

The appellees insist that the question of advertisement was settled in their favor in the case of *First Bank & Trust Co. of South Bend* v. *Ralston, supra.* In that case the constitutionality of the Act was considered. The appellant in that case "suggested" that the statute should not be construed to apply to cases in which property had been advertised for sale prior to its passage. The Supreme Court could not agree with a suggestion so broad in its implications, nor can we, for the statute would seem to apply in cases where lands have been properly advertised for sale for taxes only, whether before or after the effective date of the Act. The Supreme Court did not consider a factual situation such as we have here, nor hold that an advertisement such as we have considered was sufficient under the Act.

Judgment reversed and cause remanded with instructions to sustain appellants' motion for new trial.

NOTE.—Reported in 66 N. E. (2d) 285.